UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND )
EXCHANGE COMMISSION, )
)
          Plaintiff, )
v. )
)
STEPHEN F. MOLINARI and )
NATIONWIDE PHARMASSIST CORP., )
)
          Defendants. )
_____)

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

### I. INTRODUCTION

1. From approximately November through December 2011, Defendants Stephen F. Molinari and Nationwide Pharmassist Corp. engaged in a fraudulent scheme involving Nationwide's stock. The scheme involved an illicit kickback and phony invoice to mask the kickback.

2. Molinari, the CEO and chairman of Nationwide, paid an illegal kickback to a purported principal and fiduciary of a hedge fund ("hedge fund manager") so he would invest in Nationwide's private placement offering of 1,800,000 shares of the company's stock for $1.70 per share for a maximum offering amount of $3,060,000.

3. Unbeknownst to the Defendants, the hedge fund was a creation of the FBI. The corrupt hedge fund manager was actually an undercover agent, and the middleman who introduced the undercover agent to Molinari was a witness cooperating with the FBI.

4. The Defendants attempted to conceal the kickback by making it appear as if the kickback was payment of an invoice for services purportedly rendered. In reality, no services were ever rendered.

5. As a result of the conduct described in this Complaint, the Defendants violated Section 17(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(1); and Section 10(b) and Rule 10b-5(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a). Unless restrained and enjoined, they are reasonably likely to continue to violate the federal securities laws.

6. The Commission respectfully requests that the Court enter: (a) a permanent injunction restraining and enjoining the Defendants from violating the federal securities laws; (b) an order directing the Defendants to pay disgorgement with prejudgment interest; (c) an order directing the Defendants to pay civil money penalties; (d) an order barring Molinari from participating in any offering of a penny stock; and (e) an order barring Molinari from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

## II. DEFENDANTS

7. Molinari was Nationwide's chairman and CEO. He resides in Boca Raton, Florida. From approximately 1989 through 2001, Molinari was associated with various broker-dealers as a registered representative.

8. Nationwide is a private Florida corporation with principal offices located in Boca Raton, Florida. Nationwide was purportedly established as a mail order prescription drug business.

9. Nationwide is a "penny stock" as defined by the Exchange Act. At all times relevant to this Complaint, the stock's shares were offered for $1.70 per share. During the same time period, Nationwide's stock did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Exchange Act. For example, Nationwide's stock: (a) did not trade on a national securities exchange; (b) was not an "NMS stock," as defined in 17 C.F.R. § 242.600(b)(47); (c) did not have net tangible assets (i.e., total assets less intangible assets and liabilities) in excess of $5,000,000; and (d) did not have average revenue of approximately $6,000,000 for the last three years. *See* Exchange Act, Rule 3a51-1(g).

### III. JURISDICTION AND VENUE

10. The Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a); and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

11. This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because Molinari resides in Boca Raton and Nationwide is a Florida corporation based in Boca Raton. Also, many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the District. For example, Molinari met with the cooperating witness (hereinafter, "CW") and the FBI agent on November 30, 2011 in Boca Raton to discuss the scheme.

12. The Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, or of a means or

instrumentality of interstate commerce, or of the mails, in connection with the conduct alleged in this Complaint.

## IV. THE FRAUDULENT SCHEME

13. On November 21, 2011, Molinari met with CW to discuss possible transactions involving Nationwide. CW told Molinari that CW was working with a hedge fund manager (actually an undercover FBI agent) who was a fiduciary of the fund, and that the manager could invest money where he wanted, so long as he was paid. During the meeting, Molinari told CW that Molinari wanted to take Nationwide public eventually.

14. On November 30, 2011, Molinari met in Boca Raton with CW and the FBI agent posing as the corrupt hedge fund manager to discuss a fraudulent scheme involving Nationwide stock. During the meeting, Molinari stated if he had a "few million bucks" Nationwide could go "public in January." In response to the agent's question about how long the Nationwide stock would be "locked up," Molinari said if the agent's fund invested enough money, Molinari would buy a shell corporation and go public and be trading by January.

15. Subsequently, as part of the scheme, Molinari and the agent agreed the hedge fund would invest in a private placement stock offering by Nationwide in exchange for a kickback to the hedge fund manager of 20% of the amount invested.

16. Molinari and the agent further agreed that to conceal the kickback, Nationwide would make the payment to a company that a relative of the agent purportedly worked for.

17. During a December 2, 2011 telephone call, Molinari told the agent that Molinari had identified a shell corporation and could be trading Nationwide stock within two weeks.

18. On December 5, 2011, Molinari sent the agent, via express delivery, a subscription agreement for Nationwide's private placement offering.

19. On December 7, 2011, the agent signed the subscription agreement and returned it to Nationwide via express delivery. Pursuant to the terms of the agreement, the hedge fund would purchase 1,764,706 shares of Nationwide stock for $3 million. The next day, Molinari signed the subscription agreement on behalf of Nationwide and emailed it to the agent.

20. During a December 7, 2011 telephone call, Molinari told the agent that acquiring a shell corporation would cost between $350,000 and $400,000.

21. On December 8, 2011, the agent: (a) wired $50,000 of FBI funds to Nationwide, as payment for the hedge fund's initial stock purchase in Nationwide's private placement offering; and (b) sent Molinari an email attaching a phony invoice in the amount of $9,990 from the company employing the agent's "relative" for services purportedly provided to Nationwide during the previous three months.

22. During a December 8, 2011 telephone call, Molinari told the agent that that Nationwide stock could go public at $4 to $5 per share, which would double the hedge fund's investment.

23. On December 12, 2011, Molinari paid the 20% kickback by sending, via express delivery to the address on the phony invoice, a Nationwide check in the amount of $10,000 payable to the company employing the agent's relative.

24. Over the next several weeks, Molinari attempted to reach the agent and CW regarding additional funding for Nationwide. Ultimately, however, there were no further transactions.

## COUNT I

### Fraud In Violation of Section 17(a)(1) of the Securities Act

25. The Commission realleges and incorporates paragraphs 1 through 24 of its Complaint.

26. From approximately November through December 2011, the Defendants directly and indirectly, by use of any means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

27. By reason of the foregoing, the Defendants, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT II

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

28. The Commission realleges and incorporates paragraphs 1 through 24 of this Complaint.

29. From approximately November through December 2011, the Defendants, directly and indirectly, by the use of any means and instrumentality of interstate commerce, and of the mails, in connection with the purchase or sale of

securities, knowingly, willfully or recklessly, employed devices, schemes, or artifices to defraud.

30. By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine, and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a)(1) of the Securities Act and Section 10(b) and Rule 10b-5(a) of the Exchange Act, as indicated above.

### III.

### Disgorgement

Issue an Order directing all Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## IV.

### Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## V.

### Penny Stock Bar

Issue an Order barring Molinari from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), for the violations alleged in this Complaint.

## VI.

### Officer and Director Bar

Issue an Order pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), barring Molinari from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

## VII.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VIII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

August 14, 2013            By:  _____
Andrew O. Schiff
Senior Trial Counsel
S.D. Fla. Bar No. A5501900
Direct Dial: (305) 982-6390
E-mail: SchiffA@sec.gov
*Lead Attorney*

Trisha D. Sindler
Senior Counsel
Florida Bar No. 0773492
Telephone: (305) 982-6352
E-mail : FuchsT@sec.gov

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154